F I L E D
 Clerk
 District Court
AUG 25 2023
for the Northern Mariana Islands
By_____JP_____
      (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

JAMES WHANG DBA SOUTH PACIFIC LUMBER COMPANY,

                Plaintiff,

v.

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,

                Defendant.

CASE NO. 1:21-cv-00027

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

      Plaintiff James Whang dba South Pacific Lumber Co. ("SPLC") initiated this civil action against Defendant Imperial Pacific International (CNMI), LLC ("IPI") for IPI's alleged failure to pay rent and other costs on a property SPLC leased to IPI. (*See generally* Compl., ECF No. 1.) SPLC claims IPI failed to satisfy the past due rental balance for over two years while IPI occupied the property, therefore entitling SPLC to remedies afforded in contract law and the Holdover Tenancy Act ("HTA") of the Commonwealth of the Northern Mariana Islands ("CNMI"), *see* CMC §§ 40201 - 40206. (Compl. 5-7.) Having granted SPLC partial summary judgment on its breach of contract claim (Decision & Order Granting Pl. Partial Summ. J., ECF No. 20), SPLC now seeks damages pursuant to the HTA. IPI, by contrast, asserts that SPLC's damages must be limited based on SPLC's constructive eviction of IPI, precluding it from fully vacating the premises. (*See* Def. Am. Submission re: HTA, ECF No. 34.)

      The matter came on for a bench trial on January 11, 2023, and at its conclusion the Court took the matter under submission. (Mins., ECF No. 40.) Based on the parties' stipulated facts (ECF No. 28), the exhibits admitted at trial (Mins., ECF No. 40), witness testimony, and the record in this case, the

Court now renders its findings of fact and conclusions of law, awarding SPLC an additional total of $499,242.33 comprised of **$431,861** in unpaid rent for the period between June 1, 2021 and September 21, 2022 and **$67,381.33** in interest, plus post-judgment interest and attorney's fees.

## I.   PROCEDURAL HISTORY

SPLC asserts five causes of action against IPI: (1) summary possession under the HTA;[1] (2) double rent due under the HTA; (3) breach of contract; (4) in the alternative, unjust enrichment or quantum meruit; and (5) account stated. (Compl. 5-8.) IPI answered (ECF No. 3).

In June 2022, SPLC moved for summary judgment requesting judgment in the amount of $723,221.82 for IPI's breach of contract from March 2020 through June 2022. (Mem. P. & A. 5, ECF No. 13-1.) Troublingly, in its reply to IPI's opposition, SPLC sought judgment on its claim for unpaid rent and double rent under the HTA, expanding its initial request for relief from $723,221.82 to $920,616.00. (Reply 5, ECF No. 15.) The Court granted partial summary judgment solely on SPLC's third cause of action for breach of contract because "SPLC does not identify the legal basis for granting partial summary judgment as to any [of its other] claims[.]" (ECF No. 20 at 6.) The Court denied summary judgment seeking double rent because "SPLC did not seek [double rent] in its initial motion for summary judgment," and new arguments may not be introduced in a reply brief. (*Id*. at 6 n.1.) As a result, the Court limited judgment to damages in unpaid rent between March 2020 (when IPI ceased making payments) and May 2021 (when the Rental Agreement expired), as well as utilities and accrued interest for the same period. (*Id.* at 7.) It reasoned: "SPLC does not submit any legal arguments for any relief past the expiration of the [Rental] Agreement, and the Court will not supplement those arguments for Plaintiff SPLC." (*Id*.) In total, SPLC was awarded $243,600.00 in unpaid rent from March 2020 to

---

[1] SPLC's first cause of action for summary possession has been rendered moot as IPI has since vacated the Warehouse. (Trial Ex. 4.)

May 2021 plus $6,701 in interest and $17,052 in utilities for breach of contract totaling $267,353.00. (*Id.* at 7-8.)

Partial summary judgment granted, and settlement on SPLC's other claims having been unsuccessful, the matter proceeded to trial on SPLC's remaining causes of action including: rent due from June 2021 to September 2022, double rent, interest, and utilities for the same period.

At the bench trial, the Court addressed certain preliminary matters including the presentation of witnesses and the parties' Stipulated and Uncontroverted Facts (ECF No. 28). As to the stipulated facts, the Court acknowledged and granted IPI's withdrawal (ECF No. 31) of its stipulation to certain facts. (Mins., ECF No. 40.) The Court also admitted Trial Exhibits 1 through 4 as stipulated by the parties. (*Id.*)

As to witnesses, SPLC presented a single witness: Plaintiff James Whang. (*Id.*) IPI sought to introduce two IPI representatives as witnesses, Mr. Howyo Chi and Mr. Ray Yumul. (*Id.*) However, because IPI failed to identify Mr. Chi as a potential witness in its initial disclosures (ECF No. 9), the Court rejected IPI's request to include him as a witness for failure to comply with Rule 26 of the Federal Rules of Civil Procedure (Mins., ECF No. 40). In addition, although SPLC was noticed of Mr. Yumul in IPI's initial disclosures (ECF No. 9), IPI failed to identify Mr. Yumul in its list of witnesses prior to trial (*See* Mins., ECF No. 40). Nevertheless, IPI did introduce Mr. Chi, who managed IPI's properties including warehouses, as a witness for impeachment purposes. (*See id.*)

At closing, SPLC and IPI contested whether IPI was constructively evicted from SPLC's property without opportunity to vacate. Ultimately, SPLC requested a total of $787,436.01 in past due rent, interest on the balance, and double rent (Am. Ex. 5.1); SPLC waived its request for any further utilities owed beyond that granted in the Court's award of partial summary judgment. The matter was then taken under submission. (Mins., ECF No. 40.)

## II. FINDINGS OF FACT

### A. First-Year Lease: May 2015 – May 2016

Plaintiff South Pacific Lumber Co. is in the business of wholesale construction materials and warehouse rentals. It is a sole proprietorship owned by James Whang. Among its warehouse units, SPLC owns the leasehold interest of Lot No. 057 E 29 located at Lower Base, Saipan which includes a commercial warehouse space ("Warehouse") identified as Building B and C.

On May 8, 2015, IPI entered into a Warehouse Rental Agreement ("Rental Agreement") with SPLC for the Warehouse. (Ex. 1.1 – 1.5.) The Rental Agreement provided that IPI would occupy the Warehouse for one year commencing on May 11, 2015 and ending on May 11, 2016 with the option to extend the Rental Agreement for up to five years. IPI agreed to pay SPLC monthly rent and to cover the costs of all utilities and trash collection services. SPLC has never contested whether IPI paid its monthly rent or other costs during this first year.

### B. Lease Extension: May 2016 – May 2021

Prior to the expiration of IPI's one year lease in the Warehouse, SPLC agreed to extend the Rental Agreement through May 10, 2021. (*See* Ex. 2.1 – 2.6 (extending lease through May 2019); Decision & Order 2, ECF No. 20 (amending Rental Agreement to increase the term of the lease period to May 10, 2021 (citing Decl. Whang ¶ 5, ECF No. 13-2 ("On April 26, 2016, SPLC and IPI signed an amendment to the Lease increasing the term of the Lease to May 10, 2021[.]")))).) The total area IPI would occupy was increased to 19,200 square feet and rent amounted to $16,240.00. (Stipulated and Uncontroverted Facts ¶¶ 15, 16, ECF No. 28.) SPLC has never contested that IPI failed to pay its rent and utilities until March 2020.

//

/

4

### C. Use and Access to the Warehouse: March 2020 – September 2022

In March 2020, IPI started becoming delinquent in its payments to SPLC. Thus, in April 2020,[2] Mr. Whang noticed IPI[3] of its nonpayment and indicating he would bar access to the Warehouse. John Cepeda and George Pangelinan, IPI representatives who worked in the Warehouse, requested that Mr. Whang allow IPI continued use and access until August or September so they could remove certain essential items (computers and trucks).[4] Mr. Whang agreed, and IPI subsequently removed its essential equipment. Mr. Whang padlocked the Warehouse in August 2020.

During the period in which the Warehouse was padlocked, IPI requested access four separate times. In the first two instances, IPI needed to retrieve its tools and then Xerox machines and equipment. Mr. Whang consented both times and unlocked the padlock within 24 hours to give IPI access. IPI also sought access two other times to retrieve files and other inventory, which was granted. According to Mr. Whang, he never declined IPI's requests to access the Warehouse during the period in which it was padlocked, and IPI never complained about access issues.

Although Mr. Whang padlocked one entryway into the Warehouse, his testimony revealed there were in fact two access points into the Warehouse: two service doors on the left and the right that lead to unlocked sliding doors. When IPI began occupying the Warehouse, SPLC provided IPI with four keys: two keys for the left service door and two keys for the right service door. At the outset, IPI's representative in charge of warehouse operations, John Cepeda, informed Mr. Whang that IPI changed the locks on the service doors. By the time Mr. Whang sought to preclude access, he only padlocked

---

[2] During direct examination, Mr. Whang was unclear as to what year he submitted this letter notifying IPI of its delinquency. However, cross-examination revealed it was in 2020. Mr. Whang padlocked the Warehouse in August 2020, further corroborating when his letter would have been delivered.

[3] IPI was noticed via letter hand delivered to IPI's property operations representative, John Cepeda.

[4] Mr. Whang also indicated that Mr. Cepeda and Mr. Pangelinan requested continued access for their own job security. It is unclear what Mr. Cepeda and Pangelinan meant by this.

one service door. IPI had never returned the keys originally handed over or the keys to the changed locks until it completely vacated the Warehouse in September 2022. Even then, IPI only returned one set of the original keys. Put simply, IPI at all times had access to at least one service door that was not padlocked. IPI's requests for access via the padlocked service door was, Mr. Whang presumes, purely out of professional courtesy.

On June 8, 2022, IPI, at the suggestion of Mr. Whang, consolidated their inventory and ultimately reduced the amount of space occupied to save money. At this point, Mr. Whang removed the padlock so IPI could consolidate its inventory. IPI never gave that key back until it fully surrendered possession. Thus, from June 8, 2022 through September 21, 2022 when IPI completely surrendered possession (Trial Ex. 4), IPI had all the keys to use and access the Warehouse.

**D. Holdover Status: July 28, 2021 – September 21, 2022**

IPI has not remitted payment to SPLC since March 2020 when IPI's monthly rent was at $16,240.00 for 19,200 square feet.

IPI's Rental Agreement with SPLC expired in May 2021. (Decision & Order 2 (amending Rental Agreement to increase the term of the lease period to May 10, 2021 (citing Decl. Whang ¶ 5 ("On April 26, 2016, SPLC and IPI signed an amendment to the Lease increasing the term of the Lease to May 10, 2021[.]")))).) After the written agreement expired, on July 28, 2021, SPLC posted a "3 Day Notice to Pay Rent or Quit" on the Warehouse door. (Trial Ex. 3.1 – 3.2.) In that Notice, IPI was informed that as of July 2021, it was indebted to SPLC for a total of $386,512.00 for the rent and use of the Warehouse. (Trial Ex. 3.2.) "SPLC demands payment of the rent and possession of the premises within 3 days . . . from the date of delivery of this notice, to wit: on or before the day of August 2, 2021." (*Id.*) "Failure to pay rent . . . may subject [IPI] to attorney's fees as well as any and all statutory

penalties, including but not limited to damages equal to double the amount of rent due on the premises pursuant to the Hold Over Tenancy Act." (*Id*.)

Almost a year later, on June 8, 2022, IPI reduced the amount of space it occupied and therefore SPLC prorated IPI's monthly rent to $9,600.00 but still claimed this amount is subject to double rent pursuant to the HTA.

### III.    CONCLUSIONS OF LAW

The Court has already determined that SPLC prevails on its breach of contract claim for the period between March 2020 through May 2021. Now, SPLC seeks damages pursuant to the HTA for unpaid rent, interest on those past due amounts, and double rent from June 2021 to September 2022. (*See* Am. Final Pretrial Order 3, ECF No. 39.) The parties contest whether IPI was given access to vacate the premises, and if not, whether SPLC is entitled to any damages as a result. In determining SPLC's entitlement to damages under the HTA, the Court must interpret the relevant provisions within the HTA.

"When construing a state statute, a district court looks to the state for rules of statutory construction." *Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, No. 19-CV-00016, 2020 WL 2026505, at *2 (D. N. Mar. I. Apr. 28, 2020) (citing *Hunt v. Check Recovery Sys., Inc.*, 478 F. Supp. 2d 1157, 1162 (N.D. Cal. 2007)). In the CNMI, "[t]he most basic canon of statutory construction is that 'the [statutory] language must be given its plain meaning, where the meaning is clear and unambiguous.'" *Saipan Achugao Resort Members' Ass'n v. Wan Jin Yoon*, 2011 MP 12 ¶ 23 (citations omitted). Statutes must also be read "with an aim to effect the plain meaning of [its] object." *Marianas Eye Inst. v. Moses*, 2011 MP 1 ¶ 11 (citation omitted). Courts "should avoid interpretations of a statutory provision which would defy common sense [or] lead to absurd results . . . ." *Commonwealth Ports Auth. v. Hakubotan Saipan Enters., Inc.*, 2 N. Mar. I. 212, 224 (1991) (citation omitted). Where there is no

written or local customary law, "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decisions in the courts of the [CNMI.]" 7 CMC § 3401.

### A. Holdover Tenancy Act

In 1997, the HTA was passed to "provide for a prompt and fair summary procedure for the eviction of a holdover tenant from the leased premises." N. Mar. I. Pub. L. 10-67 § 2 (Findings and Purpose). The HTA also outlines the remedies a landlord may take to evict a holdover tenant in addition to those provided in a rental agreement. *See* 2 CMC § 40201.

Section 40204 of the HTA identifies the procedures in which a tenant is to be removed. In particular, a tenant may be removed when he "holds over and continues in the possession of the demised premises . . . after the expiration of his time, without the permission of the landlord." 2 CMC § 40204(a). Where there is a holdover tenant who has defaulted in rent payments, the landlord is to provide "three days' notice in writing requiring the payment of the rent or the possession of the premises[.]" *Id.* at (b). Service is effectuated by hand delivery or "if the tenant is absent from the rented premises, by leaving a copy thereof at such a place." *Id.* Section 40204(b) provides the language in which a notice is to be modeled after.

In addition to recovering possession, 2 CMC § 40206, and unpaid rent, 2 CMC § 40202, "[t]he landlord may also recover double the amount of rent due on the premises, or any part thereof, for the period during which the tenant refuses to surrender possession." 2 CMC § 40205. The prevailing party may recover reasonable court costs, including attorney's fees for any civil action brought under the HTA. 2 CMC § 40209.

//

/

### B. Constructive Eviction

A critical issue in this Court's decision is whether SPLC engaged in self-help such that it constructively evicted IPI from the Warehouse, thereby precluding its ability to vacate its inventory. IPI argues that SPLC "physically and/or constructively prevent[ed] and barr[ed] [IPI] from full, unfettered, and marginally reasonable possession, access, custody, and control to/of [IPI's] property within the premises" between May 2020 and August 2021. (ECF No. 34 at 2.) As such, IPI maintains that damages should be limited. SPLC counters that IPI had access to alternative entrances into the Warehouse, and that in any event, Mr. Whang acquiesced in giving IPI access whenever IPI requested. (*See* Pl. Proposed Findings of Fact and Conclusions of Law ¶¶ 38-41, ECF No. 35.)

The HTA requires landlords provide a three-day notice to tenant before removal or eviction from the premises. 2 CMC § 40204(b). The Restatement finds that

> [i]f the controlling law gives the landlord . . . a speedy judicial remedy for the recovery of possession of leased property from a tenant improperly holding over . . . the landlord . . . may [not] resort to self-help to recover possession of the leased property . . . unless the controlling law preserves the right of self-help.

Restatement (Second) of Property: Landlord and Tenant § 14.2 (1977).

Although CNMI statutory law does not define constructive eviction, the CNMI Supreme Court has defined it as occurring "through intentional conduct by the landlord which renders the lease unavailing to the tenant or deprives him of the beneficial enjoyment of the leased property, causing him to vacate the premises." *See Manglona v. Commonwealth*, 2005 MP 15 ¶ 30 (citations omitted). "Generally, the interference by the landlord must render the premises unfit or unsuitable for occupancy in whole or in substantial part for the purposes for which they were leased." *Id.* (citation omitted). In that case, the CNMI argued that the landlord failed to fulfill his obligations to repair the conditions of the property, "making it unsuitable as an office and resulting in the constructive eviction of the CNMI

Government." *Id*. ¶ 23. However, the Supreme Court found that there was no evidence to suggest the landlord ignored the CNMI's requests to maintain the property; in fact, there was evidence that the CNMI made no further complaints regarding the premises which "tends to show that [the landlord's] intervention rendered the leased premises more suitable for the [CNMI's] use." *Id*. ¶ 32.

Here, the Court finds that IPI was not constructively evicted at any time thus entitling SPLC damages under the HTA. While Mr. Whang did padlock *one* of the service doors, IPI at all times had access to the second and alternative access door. IPI cannot assert that it did not have access when the testimony reveals otherwise. And, much like in *Manglona*, IPI never made complaints about access which tends to show that SPLC's intervention was not truly a constructive eviction; rather, IPI was always given access whenever requested. At most, the padlock that Mr. Whang put on one of the service doors was symbolic—a means to trigger IPI to begin paying its overdue balance. IPI was never actually or constructively evicted in light of its continued use and access to the Warehouse. Finding no constructive eviction, IPI became a holdover tenant when it failed to pay rent as required and demanded under the rental agreement, and failed to vacate the warehouse when SPLC demanded possession of the premises in July, 2021. The Court now turns to the precise damages SPLC seeks.

**C. Damages**

SPLC seeks a total of $787,436.01 in past due rent, interest on the balance, and double rent (Am. Ex. 5.1), having waived its request for utilities. Based on the evidence presented, the Court awards SPLC a total of $766,595.33 which consists of:

(1) $243,600 in rent owed through May 2021, when the Rental Agreement terminated as described in this Court's Decision & Order granting partial summary judgment. (ECF No. 20 at 7.)

(2) $17,052 in interest fees calculated at 1% per month on the past due balance through May 2021 as described in this Court's Decision & Order granting partial summary judgment. (*Id*.)

(3) $6,701 in unpaid utilities through May 2021 as described in this Court's Decision & Order granting partial summary judgment. (*Id*.)

(4) $431,861 in unpaid rent between June 1, 2021 and September 21, 2022 and doubled rent beginning in August 2021.

(5) $67,381.33 in interest fees calculated at 1% per month on the past due balance excluding double rent from June 1, 2021 through September 21, 2022.

Below is the Court's reasoning of the amounts owed beyond that granted in the partial summary judgment as well as a table depicting its calculations.

1. Past Due Rent & Double Rent

The HTA indicates that "rent is payable without demand or notice . . . at the beginning of each rent payment period[.]" 2 CMC § 40202(a). "When any tenancy . . . has expired and the tenant holds over in the possession of the premises without renewing the lease . . . then such holding over shall be construed to be a tenancy at sufferance." *Id*. at (c); *see Tenancy at Sufferance*, Black's Law Dictionary (11th ed. 2019) (defining tenancy at sufferance as "arising when a person who has been in lawful possession of property wrongfully remains as a holdover after his or interest has expired").

As iterated previously, IPI was never "removed" such that it no longer had use, enjoyment of or possession of the premises, nor constructively evicted by SPLC. IPI, at all times, utilized and had access to the Warehouse at minimum through one service door that was not padlocked by SPLC. Therefore, IPI's argument that it was constructively evicted and that damages should be limited as a result, fails.

In addition to past due rent, "the landlord may also recover double the amount of rent due on the premises, or any part thereof, for the period during which the tenant refuses to surrender possession." 2 CMC § 40205. Here, IPI did not fully vacate the Warehouse, and therefore "refuse[d] to

surrender possession" until September 21, 2022. Importantly, however, double rent did not accrue until August 2021 because SPLC did not notice IPI to vacate the premises pursuant to HTA until July 28, 2021. Section 40205 requires that there be a refusal of the tenant to surrender possession before double rent is triggered. This means that notice to surrender possession is a condition precedent. Therefore, the Court finds that double rent is not triggered until August 1, 2021 through September 21, 2022—after the notice was issued in July 2021.

In total, IPI now owes SPLC an additional $431,861 in rent and double rent for the period between June 1, 2021 and September 21, 2022.

2. <u>Interest</u>

As previously identified in the Court's Decision and Order Granting Partial Summary Judgment (ECF No. 20 at 7 n.3), CNMI law calculates interest as being not higher than "one percent per month on the balance due on any such contract involving a principal sum of over $300." 4 CMC § 5301. As illustrated in SPLC's exhibit, SPLC concedes that the total interest rate shall not exceed one percent per month on the balance due. (*See* Am. Ex. 5.1.)

During the bench trial, SPLC indicated it would not apply the one percent interest to a past due balance that includes double rent. However, SPLC's exhibit reflects interest applied to a past due balance that includes double rent. Therefore, as reflected in the table below, the Court applies a one percent interest fee to a past due balance that excludes double rent and awards $67,381.33 in interest fees.

///

//

/

| RENTAL DUE DATE | RENT DUE | PAST DUE (including double rent) | PAST DUE (excluding double rent) | INTEREST |
|---|---|---|---|---|
| *As of May 31, 2021*[5] | *$16,240* | *$227,360* | *$227,360* | *$2,273.60* |
| June 1, 2021 | $16,240 | $243,600 | $243,600 | $2,436.00 |
| July 1, 2021 | $16,240 | $259,840 | $259,840 | $2,598.40 |
| August 1, 2021 | $32,480 | $276,080 | $276,080 | $2,760.80 |
| September 1, 2021 | $32,480 | $308,560 | $292,320 | $2,923.20 |
| October 1, 2021 | $32,480 | $341,040 | $308,560 | $3,085.60 |
| November 1, 2021 | $32,480 | $373,520 | $324,800 | $3,248.00 |
| December 1, 2021 | $32,480 | $406,000 | $341,040 | $3,410.40 |
| January 1, 2022 | $32,480 | $438,480 | $357,280 | $3,572.80 |
| February 1, 2022 | $32,480 | $470,960 | $373,520 | $3,735.20 |
| March 1, 2022 | $32,480 | $503,440 | $389,760 | $3,897.60 |
| April 1, 2022 | $32,480 | $535,920 | $406,000 | $4,060.00 |
| May 1, 2022 | $32,480 | $568,400 | $422,240 | $4,222.40 |
| June 1, 2022[6] | $8,661.36 | $600,880 | $438,480 | $4,384.80 |
| June 9, 2022 | $19,200 | $609,541 | $442,811 | $4,428.11 |
| July 9, 2022 | $19,200 | $628,741 | $452,411 | $4,524.11 |
| August 9, 2022 | $19,200 | $647,941 | $462,011 | $4,620.11 |
| September 9, 2022 | $8,320[7] | $667,141 | $471,611 | $4,716.11 |
| September 21, 2022 | | $675,461 | $475,771 | $4,757.71 |
| **TOTALS** | **$431,861** | | | **$67,381.33** |

### D. Attorney's Fees & Costs

The HTA authorizes attorney's fees and reasonable court costs for the prevailing party for any civil action brought under the HTA. 2 CMC § 40209. Additionally, the Rental Agreement between

---

[5] The Court does not include the amounts as of May 31, 2021 as it has already been included in the Court's award of partial summary judgment. (*See* ECF No. 20.)

[6] On June 8, 2022, at the suggestion of Mr. Whang, IPI consolidated their inventory and reduced the amount of space occupied and the monthly rental rate, which is still subject to the HTA double rent clause.

[7] This is the final prorated rental amount due from September 9 to September 21, 2022 when IPI finally vacated the Warehouse.

SPLC and IPI also authorizes attorney's fees and court costs. (Trial Ex. 2.5 at § 15 ("In the event any dispute or litigation arises out of this Rental, the prevailing party (Landlord) shall be entitled to an award of attorney fees and court costs as part of its relief or recovery.").) Because SPLC is the prevailing party, the Court awards attorney's fees and costs to SPLC. SPLC is directed to submit its request for attorney's fees and costs within 14 days after entry of judgment pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i).

## IV. CONCLUSION

Based on the evidence presented at trial, the Court finds Defendant IPI liable to SPLC for breach of contract and violations of the HTA. In summary, the Court awards SPLC the amount of $675,461 in unpaid rent from March 2020 through September 2022; $84,433.33 in interest from April 2020 through September 2022; and $6,701 in utilities. Accordingly, the Clerk shall enter judgment in favor of Plaintiff James Whang dba South Pacific Lumber Co. for the amount of **$766,595.33** in damages for the period from March 2020 through September 21, 2022, plus post-judgment interest at the federal rate established pursuant to 28 U.S.C. § 1961 and attorney's fees.

IT IS SO ORDERED this 25th day of August, 2023.

RAMONA V. MANGLONA
Chief Judge